**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**AMBROSE MOSES III,**
1900 Polaris Parkway, Suite 450-017
Columbus, Ohio 43240

     Plaintiff,

vs.

**CENTRAL STATE UNIVERSITY,**
1400 Brush Row Road
Wilberforce, Ohio 45384

and,

**BOARD OF TRUSTEES OF
CENTRAL STATE UNIVERSITY,**
1400 Brush Row Road
Wilberforce, Ohio 45384

and,

**ALEX JOHNSON, INTERIM PRESIDENT
CENTRAL STATE UNIVERSITY,**
*Individually and in his official capacity*,
1400 Brush Row Road
Wilberforce, Ohio 45384

and,

**MORAKINYO KUTI, VICE-PRESIDENT
AND DIRECTOR OF LAND-GRANT,
CENTRAL STATE UNIVERSITY,**
*Individually and in his official capacity*,
1400 Brush Row Road
Wilberforce, Ohio 45384

and,

**ALCINDA FOLCK, INTERIM ASSOCIATE
ADMINISTRATOR OF EXTENSION and
PROGRAM LEADER, AGRICULTURE
AND NATURAL RESOURCES,
CENTRAL STATE UNIVERSITY,**
*Individually and in her official capacity*,
1400 Brush Row Road
Wilberforce, Ohio 45384

and,

**PAMELA BOWMAN, DIRECTOR OF
HUMAN RESOURCES,
CENTRAL STATE UNIVERSITY,**
*Individually and in her official capacity*,
1400 Brush Row Road

**Case No.:**

**JUDGE:**

**COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF AND DAMAGES**

Wilberforce, Ohio 45384                    )
                                           )
and,                                       )
                                           )
**MARK RENDLEMAN, PROGRAM**                )
**LEADER, COMMUNITY AND ECONOMIC**         )
**DEVELOPMENT, CENTRAL STATE**             )
**UNIVERSITY**                             )
*Individually and in his official capacity*,  )
1400 Brush Row Road                        )
Wilberforce, Ohio 45384                    )
                                           )
          Defendants.                      )

## COMPLAINT
### FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

Plaintiff Ambrose Moses III, upon information and belief, and for his Complaint alleges as follows:

### INTRODUCTION

1.      This is a civil rights action brought by Plaintiff Ambrose Moses III, a licensed attorney and civil rights advocate, against Central State University and various university officials. Plaintiff alleges violations of his constitutional rights under the First and Fourteenth Amendments to the United States Constitution, as well as statutory rights under 42 U.S.C. § 1983. These violations include retaliatory actions, denial of substantive and procedural due process, and the maintenance of a hostile work environment. Shockingly, the defendants have continued and even escalated their retaliatory and obstructive conduct, even in the face of an ongoing investigation into Plaintiff's complaints, underscoring the depth of their disregard for Plaintiff's rights and the urgent need for judicial intervention.

### JURISDICTION AND VENUE

2.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, as this case arises under the Constitution, laws, or treaties of the United States.

3.       This Court has authority to grant declaratory and injunctive relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. The Court has the authority to award costs and attorney's fees under 42 U.S.C. § 1988.

4.       This action includes federal questions under the First and Fourteenth Amendments to the Constitution of the United States and 42 U.S.C. § 1983.

5.       Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this district, and the Defendants reside or are located in this district.

**NATURE OF THE CASE**

6.       This case involves the Defendants' continuous and multifaceted violation of Plaintiff Ambrose Moses III's constitutional rights under the First and Fourteenth Amendments to the United States Constitution, as well as his statutory rights enforced via 42 U.S.C. § 1983. The violations include, but are not limited to, retaliatory actions, denial of substantive and procedural due process, and the creation and maintenance of a hostile work environment.

7.       Plaintiff Ambrose Moses III, a licensed attorney and civil rights advocate, has been employed by Central State University since 2017 as the first County Extension Agent in the University's Cooperative Extension Service. Moses conducts CSU business in and resides in Delaware County, Ohio. Throughout his tenure, Plaintiff has consistently advocated for diversity, inclusion, and addressing systemic issues within the University's Cooperative Extension Service.

8.       Plaintiff's advocacy efforts, which are protected under the First Amendment, have included but are not limited to promoting intentionality in the recruitment of African Americans, advocating for a comprehensive needs

assessment to identify and quantify the needs of underserved communities, and leveraging innovative technology to expand the reach and impact of Cooperative Extension Services.

9.    In response to Plaintiff's protected speech and activities, Defendants have engaged in a pattern of retaliatory conduct designed to undermine Plaintiff's professional role, reduce his job responsibilities, and create a hostile work environment. This conduct includes arbitrary reductions in his job responsibilities, denial of necessary approvals for program activities, imposition of unlawful residency requirements, and issuance of a written reprimand based on false allegations.

10.    Shockingly, Defendants have continued and even escalated their retaliatory and obstructive conduct, despite an ongoing investigation into Plaintiff's complaints. This brazen conduct underscores the depth of Defendants' disregard for Plaintiff's rights and the urgent need for judicial intervention to put an end to the ongoing violations.

11.    Defendants' actions have not only impeded Plaintiff's ability to perform his duties effectively but have also violated his rights to substantive and procedural due process under the Fourteenth Amendment. These actions have been taken without fair notice, an opportunity to be heard, or adherence to the University's established policies and procedures.

12.    The Defendants, acting under color of state law, have deprived Plaintiff of his constitutional rights, thus giving rise to claims under 42 U.S.C. § 1983. These actions reflect a deliberate indifference to Plaintiff's rights and a retaliatory motive to suppress his protected speech.

13.     Plaintiff seeks declaratory and injunctive relief to rectify these ongoing violations, as well as compensatory and punitive damages to redress the harm caused by Defendants' unlawful conduct. Plaintiff also seeks costs and attorney's fees pursuant to 42 U.S.C. § 1988.

14.     This case underscores the need for accountability and transparency within public institutions, particularly in ensuring that individuals who advocate for systemic change and diversity are protected from retaliation and unjust treatment. Defendants' actions have created a chilling effect on Plaintiff's and others' willingness to engage in protected speech, undermining the fundamental principles of free expression and equal protection under the law.

## THE PARTIES

### A. Plaintiff

15.     Plaintiff Ambrose Moses III (also referred to herein as "Moses") is a licensed attorney and civil rights advocate. He is a United States citizen and resident of Delaware County, Ohio. Moses has been employed by Central State University since March 2017 as one of the first County Extension Agents in the University's Cooperative Extension Service. Moses is currently an Extension Educator in the Community and Economic Development program area of the Central State University Cooperative Extension Service. Moses conducts CSU business remotely from Delaware County, Ohio.

### B. Defendants

16.     Defendant Central State University (hereinafter "CSU" or "University") is a state university, a public institution of higher learning, which is a body politic and corporate, and a subdivision of the state of Ohio. CSU's main campus is located at 1400 Brush Row Road, Wilberforce, Ohio 45384.

17.     Defendant Board of Trustees of Central State University (hereinafter "Board of Trustees") is the governing body of CSU.  The Board of Trustees is responsible for the proper maintenance and successful operation of the University, ensuring that it adheres to the laws of Ohio and the mandates for land-grant institutions.  Ohio law requires that the Defendant Board of Trustees shall take, keep, and maintain exclusive authority, direction, supervision, and control over the operations and conduct of such university, so as to assure for said university the best attainable results with the aid secured to it from the state.[1]  Ohio law further requires that the Board of Trustees of the Central State University shall elect, fix the compensation of, and have the right to remove the president, who shall be the chief executive officer of the university, and elect, fix the compensation of, and remove such number of professors, teachers, and other employees as is necessary.[2]  The Board of Trustees' office is located at 1400 Brush Row Road, Wilberforce, Ohio 45384.

18.     Defendant Alex Johnson (hereinafter "Johnson"), in his individual and official capacities, is the Interim President of Central State University. Johnson oversees the overall administration of the University, ensures that policies and procedures are followed, and addresses issues of compliance and governance. Johnson's office is located at 1400 Brush Row Road, Wilberforce, Ohio 45384.

19.     Defendant Morakinyo Kuti (hereinafter "Kuti"), in his individual and official capacities, is the Vice President for Research and Economic Development and Director of 1890 Land-Grant Programs at Central State University.  Kuti directs

---

[1] https://codes.ohio.gov/ohio-revised-code/section-3343.05

[2] https://codes.ohio.gov/ohio-revised-code/section-3343.06

the 1890 Land-Grant Programs, including the Cooperative Extension Service, and has a responsibility to ensure the program's compliance with federal and state regulations.  On February 9, 2024, Kuti was named the 10th President of Central State University, a position he will assume on July 1, 2024. Kuti's office is located at 1400 Brush Row Road, Wilberforce, Ohio 45384.

20.     Defendant Alcinda Folck (hereinafter "Folck"), in her individual and official capacities, is the Interim Associate Administrator of Extension and the Program Leader for the Agriculture and Natural Resources ("ANR") program area at Central State University. Folck's office is located at 1400 Brush Row Road, Wilberforce, Ohio 45384.

21.     Defendant Pamela Bowman (hereinafter "Bowman"), in her individual and official capacities, is the Director of Human Resources at Central State University. Bowman's office is located at 1400 Brush Row Road, Wilberforce, Ohio 45384.

22.     Defendant Mark Rendleman (hereinafter "Rendleman"), in his individual and official capacities, is the Program Leader for the Community and Economic Development  ("CED") program area at Central State University. Rendleman resides in Franklin County, Ohio.

## HISTORICAL CONTEXT AND BACKGROUND

23.     On January 29, 2014, Defendant Central State University, a public historically Black university (HBCU) located in Wilberforce, Ohio, was finally designated as America's newest 1890 land-grant university. This designation underpins the university's mission to serve historically underserved communities, particularly African Americans, and reflects the broader commitment to diversity, inclusion, and educational equity.

24.     Land-grant colleges and universities are institutions designated by state legislatures or Congress to receive the benefits of the Morrill Acts of 1862 and 1890, and the Equity in Educational Land-Grant Status Act of 1994. These acts aimed to expand access to higher education and provide practical, relevant education to broader segments of the population, including African Americans and Native Americans.

25.     The second Morrill Act (1890) was instrumental in promoting educational equity and addressing systemic racial disparities in higher education. It prohibited the distribution of funds to states that made distinctions of race in admissions, but allowed states that provided separate land-grant institutions for Black students to receive funds. As a result, institutions designated as land-grant institutions for Black students in then-segregated Southern states became known as "the 1890 land-grants."

26.     The land-grant system includes agricultural experiment stations established by the Hatch Act of 1887 and Cooperative Extension Services created by the Smith-Lever Act of 1914. These components are critical for research, extension activities, and providing education and resources to address the needs of local communities and promote community and economic development.

## STATEMENT OF FACTS

### A. Defendants' Ongoing Retaliatory and Obstructive Conduct

27.     On April 29, 2024, Plaintiff Ambrose Moses III sent an email to the Defendant Director of Land-Grant Programs at Central State University, detailing the most recent examples of the defendants' actions that have impeded his ability

to perform his job duties. The email, attached as Exhibit 1, provides a clear and well-documented example of the obstructive and retaliatory conduct Moses has faced, particularly from Defendant Mark Rendleman, the CED Program Leader. (See Exhibit 1)

28.  In the email, Moses describes how Rendleman's requirement for direct written approval before engaging in **any** "outreach", "outreach efforts", or "CED activity" has created a bottleneck that prevents Moses from effectively doing his job. This is despite the Director's previous guidance to "do all the options that you need to do" to fulfill job duties. The email also includes a detailed timeline of communications between Moses and Rendleman regarding the Growing Equity Partnership Grant, highlighting Moses' diligent efforts to implement the project and the roadblocks put in place by Rendleman, most notably Rendleman's withholding of direct written approval.

29.  Shockingly, the obstructive and retaliatory conduct detailed in this email has continued unabated, even as the University has initiated an investigation into Plaintiff Moses' complaints. Despite the ongoing investigation, Defendants Kuti, Folck, Bowman, and Rendleman have engaged in concerted activity to further impede Moses' ability to perform his job duties and carry out the mission of the Cooperative Extension Service.

30.  Examples of the ongoing retaliatory and obstructive conduct that has occurred since the investigation began include:

   1.  Defendant Rendleman's continued refusal to approve Moses' outreach and CED activities, effectively blocking his ability to engage with the community and fulfill his job duties.

   2.  Coordinated efforts by Defendants Kuti, Folck, Bowman, and Rendleman to isolate, marginalize, and penalize Moses, creating a hostile work environment that undermines his professional standing and ability to be effective in his role.

   3.  Defendants' unilateral decision to refer Plaintiff's complaints that were submitted to the University pursuant to University policies to the

external investigator without the procedural processing, appeals, timeline, and public records transparency that would be afforded via the University policies and applicable state law, which also raises concerns about the integrity of the investigative process and the defendants' commitment to addressing the issues raised by Moses.

31.     The fact that the defendants have continued and even escalated their retaliatory and obstructive conduct in the face of an ongoing investigation underscores the depth of their disregard for Plaintiff Moses' rights and the mission of the Cooperative Extension Service. This brazen conduct also demonstrates the need for immediate judicial intervention to put an end to the defendants' unlawful practices and ensure that Moses can perform his job duties without further interference or retaliation.

**A. Background of Plaintiff and Central State University**

32.     Plaintiff Ambrose Moses III, a licensed attorney and civil rights advocate, has been employed by Central State University since 2017 when he accepted a position as the 1890 land-grant university's first County Extension Agent within its Cooperative Extension Service. In this role, Moses has been responsible for developing and implementing educational programs, fostering community partnerships, and providing resources to underserved communities in Ohio. His dedication and innovative approach have been instrumental in expanding the reach and impact of CSU's Cooperative Extension Service.

33.     Throughout his tenure, Plaintiff has consistently advocated for the principles of diversity, inclusion, and addressing systemic issues within the University's Cooperative Extension Service, aligning his efforts with the historical mission of the land-grant system. His advocacy efforts, which are protected under the First Amendment, have been multi-faceted and impactful. Moses has tirelessly promoted intentionality in the recruitment of African Americans into the Cooperative Extension Service as a career. He has advocated for a

comprehensive needs assessment to identify and quantify the needs of underserved communities, including African American communities across Ohio. Additionally, he has advocated for leveraging innovative technology, such as blockchain and artificial intelligence (AI), to expand the reach and impact of Cooperative Extension Services.

34.     Plaintiff's advocacy efforts are directly tied to the foundational principles of the land-grant system, emphasizing the importance of providing practical education and resources to historically underserved communities. The disparate impact of the COVID-19 pandemic on African Americans, the public outcry against systemic racism in America, and the subsequent societal shifts concerning legal, social, and economic justice have underscored the critical importance of Moses' work. His protected speech and activities are integral to fulfilling the land-grant mission and addressing the systemic inequities that the Morrill Acts and subsequent legislation aimed to correct.

35.     Tragically, the Defendants have engaged in a pattern of retaliatory actions against Plaintiff, undermining the very mission he seeks to uphold. By targeting Moses for his advocacy efforts, the Defendants have not only violated his constitutional and statutory rights but have also undermined the core principles of the land-grant system. These actions highlight the urgent need for accountability and systemic change within the University's Cooperative Extension Service.

36.     The Defendants, acting both individually and in concert, have violated Plaintiff's rights as guaranteed by the First Amendment and Fourteenth Amendment to the Constitution of the United States, as well as his statutory rights enforced via 42 U.S.C. § 1983. These violations include, but are not limited to, retaliatory actions, denial of substantive and procedural due process, and maintaining a hostile work environment. The Defendants' actions have not only caused significant harm to Plaintiff but have also had a chilling effect on others who may wish to advocate for change and equity within the institution.

37.     This case seeks to hold the Defendants accountable for their unlawful actions and to secure justice for Plaintiff Moses. By doing so, this lawsuit aims to

vindicate the rights of those who speak out against systemic inequities and to promote the fundamental principles of diversity, inclusion, and equal protection under the law. The success of this case is not only critical for Plaintiff but also for the future of the land-grant system and its mission to serve all communities, regardless of race or socioeconomic status.

### B. Plaintiff's Advocacy and Protected Activities

38.     Throughout his tenure at Central State University, Plaintiff Ambrose Moses III has consistently communicated his personal and professional mission of "Legal, Social, and Economic Justice For All People" to Defendants, including the Director of Land-Grant, Associate Administrator of Extension, and the CED Program Leader. Plaintiff's advocacy and protected activities, which are central to this Complaint, demonstrate his unwavering commitment to promoting diversity, inclusion, and equity within the University's Cooperative Extension Service.

39.     A key aspect of Plaintiff's advocacy and protected activities is leveraging his position as a public employee to identify systemic issues, develop practical solutions, and influence governmental actions to implement these solutions. By doing so, Moses seeks to fulfill his mission of ensuring life, liberty, and the pursuit of happiness for all citizens, particularly those from underserved communities.

40.     On November 27, 2019, Plaintiff submitted an R.C. § 124.341 whistleblower report to Defendants, alerting them to noncompliance with state and federal law. Specifically, Plaintiff reported that the Defendants were imposing an unlawful residency requirement as part of the minimum qualifications for the newly created Regional Extension Associate positions.  (See Exhibit 2)

41.     Plaintiff cited Ohio law, which prohibits the imposition of residency requirements on higher education employees (R.C. § 124.70) and certain other

employees (R.C. § 9.481). He also referenced the Ohio Supreme Court's decision in Lima v. State, 2009-Ohio-2597, which held that a state law prohibiting general residency requirements for public employees is valid and supersedes local laws to the contrary. (See Exhibit 2)

42.      In his report, Plaintiff argued that Defendants' imposition of unlawful residency requirements on higher education employees could disproportionately exclude Black American applicants, violating state and federal civil rights laws. He cited data from the Ohio Development Services Agency, which states that "nearly four out of every ten African Americans in the state live in the cities of Cincinnati, Cleveland, or Columbus." (See Exhibit 2)

43.      On August 19, 2020, Plaintiff sent an email to CED Program Leader Anthony Barwick advocating for greater inclusion of Black Americans in the CSU Cooperative Extension Service. He highlighted Ohio's historical and present systemic racism, referencing declarations of racism as a public health crisis by multiple Ohio cities and counties, as well as a statement by Governor Mike DeWine. Moses emphasized the lack of Black representation in Extension services across Ohio and the unique opportunity presented by CSU Extension's expansion to address this disparity. He argued for the inclusion of Black Ohioans in Extension, given the growing number of Black individuals entering agriculture and the USDA's new urban agriculture initiatives.

44.      On November 4, 2021, Plaintiff sent an email to his direct supervisor, CED Program Leader Anthony Barwick, reporting that the "approved" Requests for Travel (RFTs) he had received back from University leadership had been altered, with his signature forged onto the documents. Moses further reported that similar incidents had occurred with other CED Educators and requested Barwick to

review the attached information and documents showing the inaccurate, improper, and potentially unlawful actions concerning the approved RFTs.

45.     On November 8, 2021, Barwick reported the matter up the chain of command to the Defendant Associate Administrator of Extension. At Moses's request, Barwick also escalated the issue to the Defendant Director of Land-Grant Programs. Based on information and belief, Moses understands that the alterations and forged signatures were executed by or at the direction of the Defendant Associate Administrator of Extension.

46.     On November 23, 2022, Plaintiff submitted another R.C. § 124.341 whistleblower report to Defendants, this time concerning the University's failure to comply with state and federal laws regarding employment discrimination and retaliation.

47.     On December 1, 2022, Plaintiff submitted a request to the Central State University Board of Trustees, President, and Provost for an independent investigation into a pattern of unlawful employment practices and retaliation. In his request, Moses detailed ongoing discriminatory practices, including his own experiences of retaliation and racially discriminatory treatment. He highlighted the University's failure to address previous reports he filed under R.C. § 124.341 and emphasized the urgent need for transparency and corrective actions. Moses specifically requested the suspension of scheduled interviews for the CED Program Leader position pending the investigation and called attention to the University's systemic issues, lack of diversity, and failure to uphold its mission as an 1890 Land-Grant Institution. Plaintiff subsequently sought to engage with Defendant Kuti to address the matter internally without taking matters further towards litigation. (See Exhibit 4)

48.     Throughout his tenure, Plaintiff has consistently advocated for intentionality, diversity, and inclusion in the recruitment of African Americans to the Cooperative Extension Service.

49.     Plaintiff has actively advocated for a comprehensive needs assessment to identify and quantify the needs of underserved communities in Ohio, particularly African Americans, which the CSU Cooperative Extension Service can address.

50.     Recognizing the potential of technology to expand the reach and impact of Cooperative Extension Services, Plaintiff has promoted the utilization and leveraging of innovative tools such as blockchain solutions and online communication platforms (Zoom, Microsoft Teams) to better serve underserved residents of Ohio via hybrid (i.e. simultaneously in-person and online) Cooperative Extension Service program activities.

51.     In line with administrative and legislative declarations by several Ohio cities and counties, Plaintiff has advocated for CSU's Cooperative Extension Service to engage in efforts and utilize policy, systems, and environmental (PSE) methodologies to address racism as a public health crisis.

52.     During the COVID-19 pandemic, Plaintiff's role was elevated from a County Extension Educator to a Statewide Extension Educator.  In this new role, Plaintiff's early observation and research highlighted the disparate impact of the pandemic on the Black community and Black-owned businesses.  In response, he developed a program called PRiMR: Disaster Management Education to address these disparities and provide much-needed support to affected communities.

53.     Plaintiff has consistently raised concerns about Defendants' failure to follow University policies and procedures, especially concerning the processing

of formal complaints and job description changes. His adherence to proper protocols and insistence on transparency and accountability demonstrate his commitment to ensuring fair and equitable practices within the University.

54.  Through these and other advocacy efforts, Plaintiff Moses has demonstrated an unwavering dedication to promoting diversity, inclusion, and equity within Central State University's Cooperative Extension Service. His protected activities, aimed at addressing systemic issues and upholding the mission of the 1890 Land-Grant Institution, are central to this Complaint and the broader fight for justice and equal opportunity.

### C. Defendants' Retaliatory Actions

55.  In response to Plaintiff's protected speech and activities, Defendants have engaged in a continuous and multifaceted campaign of retaliation designed to undermine Plaintiff's professional standing, hinder his ability to perform his job duties effectively, and create a hostile work environment. The following examples illustrate the depth and breadth of the Defendants' retaliatory actions:

1.  In 2018, Defendant Director of Land-Grant, through Defendant CED Program Leader, imposed an unlawful residency requirement on Plaintiff in violation of O.R.C. § 9.481 and O.R.C. § 124.70, which prohibit such requirements for higher education employees. Although Plaintiff resisted this action and the Defendants appeared to drop the issue, Defendant Mark Rendleman, in his individual capacity and his official capacity as CED Program Leader, subsequently began applying and imposing a residency requirement on Plaintiff's work activities without Plaintiff's knowledge until recent disclosures pursuant to a public records request.

2.     On November 7, 2019, Plaintiff Ambrose Moses III, an African American, applied for all four newly created Regional Extension Associate (REA) positions for which he was qualified. Despite his qualifications, Moses was not selected for any of these positions. Moses contends that the Defendant Director of Land-Grant harbored resentment towards him for his prior protected activities concerning, but not limited to, the unlawful residency requirements the Defendants sought to impose on the REA positions and upon Moses.  This lead to Defendants' decision to not hire or promote Moses in retaliation for his exercise of First Amendment rights. The Defendants' decision to hire exclusively Caucasian candidates for all four REA positions, and their failure to hire Moses for either of the two CED Extension Educator positions he applied for on March 9, 2020, and April 7, 2020, also constitutes unequal and discriminatory treatment based on race and national origin, violating the Equal Protection Clause of the Fourteenth Amendment.

3.     Defendants engaged in a concerted and coordinated effort to strip away Plaintiff's Statewide Extension Educator status and demote him to a Regional Extension Educator, effectively reducing his job responsibilities and professional standing. This action was taken in retaliation for Plaintiff's protected speech and activities.

4.     In a clear attempt to undermine Plaintiff's advocacy efforts and professional goals, Defendants removed the service to underserved populations, particularly Black communities, as a critical component of Plaintiff's job description.

5.      Defendants deliberately impeded Plaintiff's professional growth by failing to approve his travel and participation in various professional development opportunities, such as the HBCU Blockchain Conference and disaster management training sessions.

6.      Defendants imposed an arbitrary and restrictive requirement that Plaintiff obtain prior written approval from Defendant Rendleman before conducting any CED Activities and Outreach Efforts. This approval was rarely granted, effectively stifling Plaintiff's ability to perform his job duties and engage with the community.

7.      The State Personnel Board of Review (SPBR) recently found that Defendants Central State University and Morakinyo Kuti engaged in retaliatory actions against another employee, Dr. Subramania Sritharan (Dr. Sri), following his protected whistleblower activities. Dr. Sri had reported concerns about the improper use of USDA-NIFA grant funds to pay Dr. Kuti's salary, which could potentially violate federal regulations. In response to his whistleblower report, Dr. Kuti, who later became Dr. Sri's supervisor, issued non-renewal notices based on false assertions without proper consultation or justification. The SPBR determined that these non-renewals were retaliatory and that Dr. Sri's subsequent resignation was a constructive dismissal induced by CSU's false information. Notably, Human Resources Director Pamela Bowman failed to conduct a proper review of Dr. Sri's personnel file, which would have confirmed his faculty status, and instead facilitated the retaliatory actions by supporting the non-renewal decisions. The SPBR ordered CSU to restore Dr. Sri to his administrative position with all associated rights and benefits. This finding

underscores a pattern of retaliation and denial of due process within CSU, highlighting similar retaliatory actions faced by Plaintiff Ambrose Moses III for his protected activities. (See Exhibit 5)

8.      During the SPBR proceedings, Defendant Bowman testified that if "a Dean" like Dr. Kuti requested a letter of non-renewal, she would type it up without further research or consultation. This statement demonstrates Bowman's willingness to prioritize directives from university deans and high-ranking officials over adherence to established policies and procedures designed to protect employees' rights. By failing to conduct proper reviews and blindly following the instructions of deans, Bowman facilitated the retaliatory actions against Dr. Sri and enabled the abuse of power within CSU. This attitude exemplifies the broader issues of retaliation and denial of due process within the university, which are central to Plaintiff Moses' claims. The defendants' concerted and coordinated efforts leading up to the issuance of a written reprimand to Plaintiff on February 8, 2024, mirror the same pattern of misconduct and disregard for proper procedures evident in Dr. Sri's case. Bowman's testimony underscores the systemic nature of these issues and the need for accountability to prevent further violations of employees' rights.

9.      On January 3, 2024, Plaintiff wrote an email to Defendant Rendleman, stating "Good morning Mark. Since this will be our first CED Team meeting of the new year, could you start us off by explaining the plan for 2024?  Maybe you could walk us through the CED portion of the attached Extension Programs Plan of Work for FY 2024 that Dr. Folck

posted to Teams. It will be helpful for the CED Team to know and to discuss—

- the identified needs that CED will be addressing in 2024,
- what specific CED programs will be implemented and conducted in 2024,
- what impact we expect to have with the CED programs,
- how we will measure the impact of the CED programs in 2024, and
- how all of this executes and accomplishes the Extension Programs Plan of Work for FY 2024.

10. On January 9, 2024, Defendant Rendleman sent an email to Defendant Folck regarding Plaintiff Moses' email dated January 3, 2024 and protected activities, stating, "It is definitely time to circle the wagons." This statement, made in response to Moses' email, reveals the Defendants' intent to coordinate a retaliatory response against Plaintiff for engaging in protected speech and advocacy. The phrase "circle the wagons" implies a defensive and adversarial posture, suggesting that the defendants viewed Plaintiff's actions as a threat to be countered rather than legitimate concerns to be addressed. This email exchange demonstrates the defendants' retaliatory motive and their concerted efforts to target Plaintiff Moses for his protected activities, further contributing to the hostile work environment and pattern of retaliation he faced. The fact that high-level officials like Rendleman and Folck were involved in discussing and coordinating this response underscores the pervasive and systemic nature of the retaliation within CSU.

11. On January 22, 2024, Defendant Rendleman sent an email to Defendant Folck, revealing their plan to coordinate retaliatory actions against Plaintiff Moses and another employee named Amber Twitty. In the

email, Rendleman wrote, "... Now back to my wish list: ... Let's coordinate on our reprimand strategies for Ambrose and Amber. I will also be coordinating a meeting with HR, Dr. Knight. It would be nice if you could participate in these discussions."

12.     Rendleman's email dated January 22, 2024, exposes the Defendants' explicit intent to target Plaintiff Moses and another employee with reprimands, demonstrating a premeditated and coordinated effort to retaliate against them. By referring to the reprimands as part of a "wish list," Rendleman reveals a personal desire to punish Plaintiff and Amber, rather than addressing legitimate performance concerns. Furthermore, Rendleman's invitation for Folck to participate in discussions with Human Resources and Dr. Knight indicates an effort to involve multiple high-level university officials in the retaliatory scheme.

13.     Rendleman's email dated January 22, 2024 provides further direct evidence of the Defendants' retaliatory motive and their concerted efforts to take adverse actions against Plaintiff Moses. It also shows how the Defendants actively collaborated to devise strategies for issuing reprimands, creating a hostile and discriminatory work environment. The email supports the allegations in this Complaint of a pattern of retaliation and highlights the Defendants' abuse of their positions to target and punish employees who engage in protected activities or advocacy efforts.

14.     On February 5, 2024, just three days before issuing the written reprimand to Plaintiff, Defendant Rendleman sent an email to Defendant Bowman, stating, "Mrs. Bowman, I have attached the latest final draft of my letter to Ambrose Moses III. It has been reviewed by Dr. Kuti and Dr.

Folck. It is at their request that I forward it to your attention. Please review and comment." This email demonstrates the coordinated efforts of Defendants Rendleman, Kuti, Folck, and Bowman in preparing and finalizing the retaliatory written reprimand against Plaintiff. The involvement of multiple defendants in reviewing and approving the reprimand underscores the concerted nature of their actions and the high-level decision to take adverse action against Plaintiff in response to his protected activities. This email further evidences the ongoing pattern of retaliatory conduct and the defendants' joint efforts to target and punish Plaintiff for his advocacy and whistleblowing.

15.     On February 29, 2024, Defendant Folck forwarded an email to Defendant Rendleman concerning a project titled "Programming in Columbus," stating, "FYI. This is a project that Marc Amante and Ambrose have been working on since 2022." This email highlights Plaintiff's ongoing professional activities and collaborative efforts to serve the community. However, in response, Defendant Rendleman replied to Folck that same day, "Thanks for sharing! What is important to me is the fact that all activities require advance approval. Nothing is grandfathered. I will review the stack of Ambrose emails to verify that there has been a request for advance approval."

16.     Rendleman's response to Folck's email on February 29, 2024 demonstrates a targeted and retaliatory approach to scrutinizing Plaintiff's work, even for projects that had been ongoing since 2022. By emphasizing that "nothing is grandfathered" and expressing his intent to "review the stack of Ambrose emails," Rendleman singles out Plaintiff and

subjects him to heightened scrutiny and approval requirements not applied to other employees. This exchange further evidences the defendants' concerted efforts to create obstacles for Plaintiff and restrict his ability to perform his job duties, in retaliation for his protected activities and advocacy efforts. The email chain also shows how the defendants actively shared information about Plaintiff's work and collaborated to implement retaliatory measures, creating a hostile and discriminatory work environment.

17.     Defendants consistently created a hostile work environment for Plaintiff by marginalizing him, excluding him from important discussions, and characterizing his legitimate professional activities as disruptive. This ongoing conduct was designed to punish Plaintiff for his advocacy efforts and chill his protected speech.

18.     In a clear act of retaliation, Defendant Rendleman unilaterally canceled nearly all one-on-one meetings with Plaintiff between February 2, 2024, and the filing of this Complaint, denying him critical opportunities to address important issues and perform his job duties effectively, including but not limited to the Greater Equity Partnership Grant.

19.     Defendant Rendleman further retaliated against Plaintiff by denying his CED Extension Educator Individual Plans of Work for both 2023 and 2024, effectively blocking Plaintiff's ability to carry out his professional responsibilities and advocate for the needs of underserved communities.

20.     On or about July 19, 2023, Defendant Rendleman denied Plaintiff's advocacy and Proposal for a Pilot Project Utilizing the PSE Approach to Needs Assessment and Program Development, another clear example of

retaliation designed to impede his advocacy efforts and professional growth.

21.     Defendants failed to approve Plaintiff's request to attend disaster management training at the National Incident Management System Agrosecurity Whole Community Resilience Incident Command System workshop scheduled for May 23-25, 2023 in Montgomery, Alabama, despite the fact that lodging would have been provided by the Extension Disaster Education Network (EDEN). This denial was retaliatory and an adverse action against Plaintiff for engagement in protected activities.

22.     Similarly, Defendants failed to approve Plaintiff's request to attend disaster management training at the 1890 SARE Project Bootcamp in Atlanta, Georgia, on February 7-9, 2024, even though all costs (travel, lodging, food, registration) would have been covered by the 1890 EDEN Advisory Group. This rejection was another instance of retaliation against Plaintiff.

23.     Defendants denied Plaintiff's request, as Central State University's Delegate to EDEN and a member of the 1890 EDEN Advisory Group, to attend the 1890 EDEN Face-to-Face Meeting at North Carolina A&T on June 4-6, 2024, despite the fact that all costs would have been paid by the 1890 EDEN Advisory Group. This denial was a clear attempt to prevent Plaintiff from engaging in important professional activities and advocating for the needs of underserved communities.

24.     Defendants failed to approve Plaintiff's Request for Approval to conduct outreach and cooperative extension services with OEFFA and

their Farmer Helpshops on May 20, 2024, and August 19, 2024, further hindering his ability to perform his job duties and serve the community.

25.    On or about December 2, 2021, CED Program Leader Barwick announced his resignation and recommended to the Associate Administrator of Extension that Plaintiff Ambrose Moses III be named Interim CED Program Leader. Despite Barwick's recommendation, which highlighted Moses' qualifications and seniority within CSU Extension, the Dean and Director of Land-Grant Programs did not appoint Moses or anyone else to the interim position, leaving the position vacant for nearly a year. The Defendants' failure to appoint Moses as Interim CED Program Leader, despite his qualifications and Barwick's recommendation, was a clear act of retaliation against him for his protected activities.

56.    The aforementioned actions are just a sample of the continuous and multifaceted retaliation Plaintiff has faced for his protected speech and activities. As additional evidence is uncovered, the full extent of Defendants' retaliatory conduct will come to light, further demonstrating the severity and pervasiveness of their actions.

**D. Defendants' Denial of Due Process**

57.    In addition to the retaliatory actions outlined above, Defendants have consistently denied Plaintiff his right to due process, as guaranteed by the Fourteenth Amendment to the United States Constitution. The following examples illustrate the Defendants' pattern of disregarding established University policies and procedures, thereby depriving Plaintiff of fair notice, an opportunity to be heard, and impartial consideration of his grievances.

1.      Defendants arbitrarily reduced Plaintiff's job responsibilities and demoted his position without providing fair notice, an opportunity to be heard, or adhering to the University's established policies and procedures. This denial of due process not only violated Plaintiff's constitutional rights but also undermined his ability to perform his job duties effectively and advocate for the needs of underserved communities.

2.      Central State University's Policy No. 618 mandates that the job performance of all staff members of non-bargaining units be evaluated formally by their supervisor at least annually. In 2022, Defendants failed to appoint an interim CED Program Leader, leaving Plaintiff Ambrose Moses III, a CED Extension Educator, without a proper supervisor to conduct his performance appraisal as required by Policy No. 618. Instead, the Associate Administrator of Extension, whom Moses had previously reported for forgery, conducted his performance appraisal. The Associate Administrator retaliated against Moses by not following the mandated performance appraisal process and giving Moses an unfair, untrue, and low score. Despite Moses' objections to this violation of University policy, communicated via email on May 13, 2022, to the Dean/Director of Land-Grant, Associate Administrator of Extension, and Director of Human Resources, Defendant Bowman has failed to respond to Moses' concerns, further denying him due process.

3.      Defendants removed key aspects of Plaintiff's job description, including his role in the EDEN Advisory Group, without proper justification or due process. This unilateral action negatively impacted Plaintiff's

professional duties and contributions, and denied him the opportunity to contest the changes through established University channels.

4.      Defendants consistently failed to process Plaintiff's formal complaints and grievances according to University policies. Instead, they would either ignore and take no action or, as in recent weeks, Defendants have unilaterally referred Plaintiff's complaints to an external investigator who has an attorney-client relationship with the University.

5.      Defendants' referral of Plaintiff's complaints to an external investigator, with whom one or more of the Defendants has an attorney-client relationship, has, and continues to, deny Plaintiff due process and equal protection afforded by the Fourteenth Amendment and 42 U.S.C. § 1983, including but not limited to, the uniform procedural processing, appeals, timelines, and public records transparency that would be afforded via the University policies and applicable state law. This also raises concerns about the integrity, fairness, and impartiality of the investigative process and the Defendants' commitment to addressing the issues raised by Moses as he petitions the government for a redress of his grievances.

6.      On April 16, 2024, Plaintiff Ambrose Moses III submitted a formal complaint to Central State University leadership, including Defendants Alex Johnson, Morakinyo Kuti, and Pamela Bowman, alleging copyright infringement, false attribution, plagiarism, academic dishonesty, retaliation, and hostile work environment by Defendant Mark Rendleman, the CED Program Leader. Moses detailed violations of the University's Professional Code of Conduct, Intellectual Property Policy, and federal copyright laws, asserting that his educational materials were used without

authorization and falsely attributed to others. Despite the serious nature of these allegations, the University failed to process Moses' complaint through its Human Resources department, Intellectual Property Committee, or any internal mechanism, instead referring the matter to an external investigator with an attorney-client relationship with the University. This handling of the complaint exemplifies the ongoing denial of due process and the retaliatory actions Moses has faced. (See Exhibit 3)

7.      On April 17, 2024, Plaintiff Ambrose Moses III submitted a formal complaint to Central State University's Director of Human Resources, Pamela Bowman, detailing ongoing violations of the University's Professional Code of Conduct, University Policy No. 8, University Policy 607, and University Policy 607.1. The complaint, which followed a previous report on November 28, 2023, addressed persistent wrongful and unlawful treatment, including a "quiet firing" campaign and violations of state and federal laws. Despite the University's policies requiring internal processing of such complaints, Moses' grievances were unilaterally referred to an external investigator who has an attorney-client relationship with the University, thereby denying him timely, fair, and impartial consideration of his claims in accordance with established University procedures.

58.      The Defendants' consistent denial of due process to Plaintiff Moses, as evidenced by the examples above, demonstrates a clear pattern of disregard for his constitutional rights and a failure to adhere to the University's own policies and procedures. These actions have not only caused significant harm to

Plaintiff's professional standing and ability to perform his job duties but have also

created a chilling effect on his protected speech and advocacy efforts.

59.       By referring Plaintiff's complaints and grievances to an external

investigator with an attorney-client relationship with the University, Defendants

have effectively denied him access to the impartial complaint resolution

mechanisms guaranteed by University policy and the Fourteenth Amendment.

This denial of due process has compounded the retaliatory nature of Defendants'

actions and further underscores the need for judicial intervention to protect

Plaintiff's rights.

## CAUSES OF ACTION

### COUNT I:
### VIOLATION OF FIRST AMENDMENT RIGHTS
### UNDER 42 U.S.C. § 1983
### RETALIATION FOR PROTECTED SPEECH AND ACTIVITIES

60.       Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

61.       Plaintiff Ambrose Moses III engaged in constitutionally protected speech

and activities, including but not limited to: a. Advocating for diversity, inclusion,

and addressing systemic issues within Central State University's Cooperative

Extension Service; b. Promoting intentionality in the recruitment of African

Americans into the Cooperative Extension Service; c. Advocating for a

comprehensive needs assessment to identify and quantify the needs of

underserved communities, particularly African American communities across

Ohio; d. Leveraging innovative technology to expand the reach and impact of

Cooperative Extension Services; e. Reporting noncompliance with state and federal laws, including whistleblower reports filed under R.C. § 124.341.

62.     Plaintiff's protected First Amendment speech and activities addressed matters of public concern, including but not limited to, the effective functioning of the University's Cooperative Extension Service, the fulfillment of its mission as an 1890 Land-Grant Institution (including but not limited to the completion of proper needs assessments), compliance with state and federal laws, and addressing racism as a public health crisis.

63.     In response to Plaintiff's protected speech and activities, Defendants, acting under color of state law, took adverse actions against Plaintiff, including but not limited to: a. Reducing Plaintiff's job responsibilities and demoting his position; b. Imposing unlawful residency requirements on Plaintiff; c. Issuing a written reprimand to Plaintiff based on false allegations of insubordination; d. Creating and maintaining a hostile work environment that marginalized Plaintiff, excluded him from important discussions, and characterized his legitimate professional activities as disruptive.

64.     Defendants' adverse actions were substantially motivated by Plaintiff's protected speech and activities, as evidenced by the temporal proximity between Plaintiff's advocacy efforts and the retaliatory conduct, as well as the pattern of targeting Plaintiff for his protected expression.

65.     By retaliating against Plaintiff for his protected speech and activities, Defendants violated Plaintiff's rights under the First Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment.

66.     Defendants' retaliatory actions have caused and continue to cause significant harm to Plaintiff, including emotional distress, humiliation, loss of professional reputation, and other damages.

67.     As a direct and proximate result of Defendants' unconstitutional retaliation and actions, Plaintiff has suffered and continues to suffer irreparable injury, including but not limited to, emotional distress, humiliation, loss of professional reputation, and other damages for which there is no adequate remedy at law.

68.     Plaintiff is entitled to declaratory relief, injunctive relief enjoining Defendants from further retaliatory actions, compensatory damages, punitive damages to deter future unconstitutional conduct, and attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

## COUNT II:
## VIOLATION OF FOURTEENTH AMENDMENT
## DUE PROCESS RIGHTS UNDER 42 U.S.C. § 1983
## DENIAL OF PROCEDURAL AND SUBSTANTIVE DUE PROCESS

69.     Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

70.     Plaintiff Ambrose Moses III had a protected property interest in his continued employment with Central State University, as well as a protected liberty interest in his professional reputation and ability to pursue his chosen career.

71.     Defendants, acting under color of state law, deprived Plaintiff of his protected property interests and liberty interests without due process of law, in violation of the Fourteenth Amendment to the United States Constitution. Specifically, but not limited to, Defendants: a) Reduced Plaintiff's job responsibilities and demoted him without providing fair notice, an opportunity to be heard, or following established University policies and procedures; b) Failed to

process Plaintiff's formal complaints and grievances according to University policies, instead unilaterally referring them to an external investigator with an attorney-client relationship with the University, denying Plaintiff access to a fair, transparent, and impartial investigation; c) Removed key aspects of Plaintiff's job description, including his role as an EDEN Delegate, a member of the EDEN Advisory Group, and serving communities historically underserved by Extension, without proper justification or due process, negatively impacting his professional duties and contributions; and d) Defendants Rendleman (Program Leader), Folck (Interim Associate Administrator of Extension), Bowman (Director of Human Resources), and Kuti (Director of Land-Grant and Vice President of Research and Economic Development) engaged in coordinated and concerted retaliatory, adverse, and hostile work environment actions that tainted the established policies and procedures for addressing employee complaints and grievances.

72.     Defendants' actions were arbitrary, capricious, and not rationally related to any legitimate governmental interest, violating Plaintiff's right to substantive due process.

73.     As a direct and proximate result of Defendants' violation of Plaintiff's procedural and substantive due process rights, Plaintiff has suffered and continues to suffer emotional distress, humiliation, loss of professional reputation, and other damages.

74.     Plaintiff is entitled to declaratory relief, injunctive relief requiring Defendants to comply with due process requirements, compensatory damages, punitive damages to deter future constitutional violations, and attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

**COUNT III:**
**VIOLATION OF FIRST AND FOURTEENTH AMENDMENT RIGHTS**
**UNDER 42 U.S.C. § 1983**
**MAINTENANCE OF A HOSTILE WORK ENVIRONMENT**

75.     Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

76.     Defendants, acting under color of state law, created and maintained a hostile work environment that violated Plaintiff's rights under the First and Fourteenth Amendments to the United States Constitution. Defendants' actions included, but were not limited to: a. Marginalizing Plaintiff and excluding him from important discussions related to his job duties and professional responsibilities; b. Characterizing Plaintiff's legitimate professional activities and protected speech as disruptive, disrespectful, or insubordinate; c. Subjecting Plaintiff to unwarranted disciplinary actions, such as the issuance of a written reprimand based on false allegations of insubordination; d. Repeatedly denying Plaintiff's requests to attend professional development opportunities and engage in community outreach activities.

77.     Defendants' actions were sufficiently severe and pervasive to alter the terms and conditions of Plaintiff's employment and create an abusive working environment.

78.     The hostile work environment created by Defendants was retaliatory in nature and designed to punish Plaintiff for his protected speech and activities, in violation of the First Amendment.

79.     Defendants' maintenance of a hostile work environment also deprived Plaintiff of his protected property and liberty interests without due process of law, in violation of the Fourteenth Amendment.

80.    As a direct and proximate result of Defendants' creation and maintenance of a hostile work environment in violation of Plaintiff's First and Fourteenth Amendment rights, Plaintiff has suffered and continues to suffer emotional distress, humiliation, loss of professional reputation, and other damages.

81.    Plaintiff is entitled to declaratory relief, injunctive relief requiring Defendants to cease their unconstitutional conduct and take steps to prevent future violations, compensatory damages, punitive damages to deter future constitutional violations, and attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Ambrose Moses III respectfully requests that this Court enter judgment in his favor and against Defendants, jointly and severally, and grant the following relief:

A. Declaratory Relief:

1.    A declaration that Defendants' actions, as described herein, violated Plaintiff's rights under the First and Fourteenth Amendments to the United States Constitution;

2.    A declaration that Defendants' actions, as described herein, violated 42 U.S.C. § 1983 by depriving Plaintiff of his constitutional rights under color of state law.

B. Injunctive Relief:

1.    A preliminary and permanent injunction enjoining Defendants, their agents, employees, and all persons acting in concert with them, from engaging in any further retaliation against Plaintiff for his protected speech and activities;

2.      An order requiring Defendants to reinstate Plaintiff to his previous position as a Statewide Extension Educator or an equivalent position, with all associated rights, benefits, and privileges;

3.      An order requiring Defendants to remove any negative or retaliatory materials from Plaintiff's personnel file, including the written reprimand based on false allegations of insubordination;

4.      An order requiring Defendants to provide written notification to all employees of Central State University's Cooperative Extension Service, stating that Defendants' actions violated Plaintiff's constitutional rights and affirming Plaintiff's right to engage in protected speech and activities without fear of retaliation.

C. Compensatory Damages:

1.      An award of compensatory damages against Defendants in their individual capacities, jointly and severally, in an amount to be determined at trial, for the emotional distress, humiliation, loss of professional reputation, loss of income, and other damages suffered by Plaintiff as a result of Defendants' unconstitutional actions.

D. Punitive Damages:

1.      An award of punitive damages against Defendants in their individual capacities, jointly and severally, in an amount to be determined at trial, to punish Defendants for their willful, malicious, and reckless disregard for Plaintiff's constitutional rights and to deter similar misconduct in the future.

E. Costs and Attorney's Fees:

    1.      An award of reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988, incurred in bringing this action to vindicate Plaintiff's constitutional rights.

F. Pre- and Post-Judgment Interest:

    1.      An award of pre-judgment and post-judgment interest on all monetary awards, to the fullest extent permitted by law.

G. Retention of Jurisdiction:

    1.      An order retaining jurisdiction over this matter to ensure Defendants' compliance with the Court's orders and to provide any additional relief that may be necessary and appropriate.

H. Any other relief the Court deems just, proper, and equitable.

Dated this 6TH day of June, 2024

**s/ Ambrose Moses III**

_____
**Ambrose Moses III   (0055231)**
Attorney at Law
1900 Polaris Parkway, Suite 450-017
Columbus, Ohio 43240
(614) 418-7898
info@MosesLaw.pro

Plaintiff *Pro Se*

## JURY DEMAND

Plaintiff Ambrose Moses III hereby demands a trial by jury on all issues so triable.

**s/ Ambrose Moses III**

_____
**Ambrose Moses III   (0055231)**