STATE OF OHIO
STATE PERSONNEL BOARD OF REVIEW



Subramania Sritharan

*Appellant*

v.

Central State University

*Appellee*

Case Nos. 2022-FRN-10-0137
2022-MIS-10-0138
2023-REM-04-0067
2023-MIS-04-0068
2023-WHB-04-0069

## ORDER

These matters came on for consideration on the Report and Recommendation of the Administrative Law Judge in the above-captioned appeals.

After a thorough examination of the entirety of the records, including a review of the Report and Recommendation of the Administrative Law Judge, along with any objections to that report which have been timely and properly filed, the Board hereby adopts the Recommendation of the Administrative Law Judge.

Wherefore, it is hereby **ORDERED** that Appellant's R.C. 124.341 Whistleblower appeal, Case No. 2023-WHB-04-0069, is **GRANTED**, and that he be restored to his administrative position of Associate Director of Research with all rights and benefits including the faculty fallback provision. Because Appellant was at all times an unclassified employee, Case Nos. 2022-FRN-10-0137, 2022-MIS-10-0138, 2023-REM-04-0067, and 2023-MIS-04-0068 are **DISMISSED** for lack of jurisdiction over the person, pursuant to R.C. 124.03 and R.C. 124.34.



Casey-Aye
McGregor - Aye
Strahorn - Aye

Terry L. Casey, *Chairman*

## CERTIFICATION

The State of Ohio, State Personnel Board of Review, ss:

I, the undersigned clerk of the State Personnel Board of Review, hereby certify that this document and any attachment thereto constitutes (the original/a true copy of the original) order or resolution of the State Personnel Board of Review as entered upon the Board's Journal, a copy of which has been forwarded to the parties this date, October 05, 2023.

Clerk

***NOTE:*** *Please see the reverse side of this Order, or the attachment to this Order for information regarding your appeal rights.*

Exhibit 5 - Page 1 of 10

NOTICE

Where applicable, this Order may be appealed under the provisions of Chapters 124 and 119 of Ohio Revised Code. An original written Notice of Appeal or a copy of your Notice of Appeal setting forth the Order appealed from and the grounds of appeal must be filed with this Board fifteen (15) days after the mailing of this Notice. Additionally, an original written Notice of Appeal or a copy of your Notice of Appeal must be filed with the appropriate court within fifteen (15) days after the mailing of this Notice. At the time of filing the Notice of Appeal or copy of your Notice of Appeal with this Board, the party appealing must provide a security deposit to the Board. In accordance with administrative rule 124-15-08 of the Ohio Administrative Code, the amount of deposit is based on the length of the digital recording of your hearing and the costs incurred by the Board in certifying your case to court. After the board has received the deposit, the transcript and copies of the file will be prepared and the cost of those items will be calculated. If the deposit exceeds the costs of these items, then a refund of the excess will be issued; if the deposit does not cover the full amount, then the appealing party will be billed for the outstanding balance. The length of the digital recording, the costs incurred, the corresponding amount of deposit required, and the final date that the Notice of Appeal or copy of your Notice of Appeal and the Deposit will be accepted by this Board are listed at the bottom of this Notice. If a full or partial transcript of the digital recording has been prepared prior to the filing of an appeal, the costs of a copy of that certified transcript will be accepted by this Board; transcript costs will be listed at the bottom of this Notice.

IF YOU ELECT TO APPEAL THIS BOARD'S FINAL ORDER, THEN YOU MUST PROVIDE THE DEPOSIT LISTED BELOW AT THE TIME YOU FILE YOUR NOTICE OF APPEAL OR COPY OF YOUR NOTICE OF APPEAL WITH THIS BOARD. Please note that the law provides that you have fifteen (15) calendar days from the mailing of the final Board Order to file your Notice of Appeal or copy of your Notice of Appeal both with this Board and with the Court of Common Pleas. The fifteenth day is the date that appears at the bottom of this Notice.

METHOD OF PAYMENT: for all entities other than State agencies, payment of the deposit must be by money order, certified check, or cashier's check. State agencies are required to use the Intra-State Transfer Voucher (ISTV) system. The State Employment Relations Board Fiscal Office will initiate the ISTV after receipt of the Notice of Appeal. The Fiscal Office can be contacted at (614) 466-1128.

IF YOU MAINTAIN YOU CANNOT AFFORD TO PAY THE DEPOSIT LISTED BELOW, THEN YOU MUST COMPLETE THE BOARD'S "AFFIDAVIT OF INDIGENCE" FORM. YOU CAN OBTAIN THAT FORM BY CALLING 614/466-7046. THE COMPLETED AFFIDAVIT MUST BE RECEIVED BY THIS BOARD ON OR BEFORE October 12, 2023. You will be notified in writing of the Board's determination. If the Board determines you are indigent, you will be relieved of the responsibility to pay the deposit to the Board. However, if the Board determines you are NOT indigent, then YOU MUST FILE YOUR NOTICE OF APPEAL OR A COPY OF YOUR NOTICE OF APPEAL AND PAY THE DEPOSIT BY THE DATE LISTED BELOW.

**If you have any questions regarding this notice, please contact the Board at 614/466-7046.**

Case Number: 2022-FRN-10-0137 et al

Transcript Costs: $1014.00    Administrative Costs: $25.00

Total Deposit Required: * $1039.00

Notice of Appeal and Deposit Must
Be Received by SPBR on or Before:    October 20, 2023

Exhibit 5 - Page 2 of 10

## STATE OF OHIO
## STATE PERSONNEL BOARD OF REVIEW

Subramania Sritharan　　　　　　　　　　Case No. 2022-FRN-10-0137 et. al.

　*Appellant*

　　　v.　　　　　　　　　　　　　　　　August 23, 2023

Central State University

　　　　　　　　　　　　　　　　　　　　Raymond M. Geis
　*Appellee*　　　　　　　　　　　　　　*Administrative Law Judge*

### REPORT AND RECOMMENDATION

To the Honorable State Personnel Board of Review:

These consolidated appeals: 2022-FRN-10-0137, 2022-MIS-10-0138, 2023-REM-04-0067, 2023-MIS-04-0068, and 2023-WHB-04-0069 came to hearing on July 19, 2023. Appellant Dr. Subramania Sritharan a.k.a. Dr. Sri ("Dr. Sri") appeared and was represented by Attorney David Duwel. Appellee Central State University ("CSU") appeared through its designee Dean Dr. Morakinyu Kuti ("Dr. Kuti") and was represented by Assistant Attorneys General Joseph Rosenthal and Lorenzo Washington.

The appeals filed in year 2022 came after Dr. Sri's contract was not renewed for his administrative position of Associate Director of Research. Following this first non-renewal, Dr. Sri resumed a faculty position on a one-year contract. The 2023 appeals come after his non-renewal from that faculty position.

At hearing Dr. Sri, Dr. Kuti, and Human Resources Director Pamela Bowman ("HR Dir. Bowman") testified.

### CONSOLIDATED STATEMENT OF THE CASE AND FINDINGS OF FACT

On March 23, 2021, while serving as Associate Director of Research, Dr. Sri wrote his then Dean, Dr. Brooks and his then colleague Dr. Kuti a letter (by email). This letter implored them not to fund Dr. Kuti's position with earmarked federal grant funds unless approval was obtained from the funder. Dr. Sri articulated that funding Dr. Kuti's salary from the grant could constitute a violation of the federal regulations governing distribution of U.S. Department of Agriculture, National Institute of Food and Agriculture funds ("USDA-NIFA"). CSU is an 1890 Land Grant College whose mission includes delivering agricultural research, education, and extension programs for the benefit of the agricultural sciences.[1]

Exhibit 5 - Page 3 of 10

Subramania Sritharan
Case No. 2022-FRN-10-0137 et. al.
Page 2

At this time, Dr. Sri was a necessary signatory to approve the distribution of funds for Dr. Kuti's salary. Approximately 40% of Dr. Kuti's salary was set to be funded with the USDA-NIFA grant. Dr. Brooks wrote Dr. Sri back stating he had information from the "blue ribbon committee" that the funding strategy was indeed permissible and that direct approval from the USDA-NIFA was unnecessary. Dean Brooks then directed Dr. Sri to, "[p]lease approve the Personnel Action Form..." and added "It is my expectation that these actions will be completed quickly..." Dr. Sri obeyed Dean Brook's request.

Dr. Kuti was promoted on March 24, 2021, following funding approval for his new position. With the promotion, Dr. Kuti was now Dr. Sri's supervisor. Dr. Sri received a notice of non-renewal from his position of Associate Director of Research on September 16, 2022. His employment ended on September 22, 2022. Dr. Sri's annual contract was apparently renewed at least once between 2021 and 2022.[2]

Dr. Sri's Associate Director of Research position is statutorily unclassified pursuant to R.C. 124.11(A)(7)(a) because the position consists of administrative duties related to research at a public University, namely CSU. Despite this, CSU enters into one-year contracts with its unclassified administrators, which may be renewed annually. Dr. Sri was a party to a series of these one-year contracts.

Dr. Kuti and Dr. Sri have known each other for about 25 years and worked in the same Land Grant College division of CSU. Dr. Sri taught courses for much of this time.

Prior faculty status was a prerequisite qualification for the Associate Director of Research position. Dr. Kuti testified that he formulated an honest (but erroneous) belief that Dr. Sri was never faculty and therefore was unqualified for continued employment as the Associate Director of Research. But Dr. Kuti did not check Dr. Sri's employee history, or request that Human Resources check his personnel file. Dr. Kuti explained that it is not unusual for administrators to also teach courses, so this fact did not alert him to Dr. Sri's prior faculty status. Dr. Kuti proceeded to issue a non-renewal letter to Dr. Sri, dated September 16, 2022, based solely upon the false assertion that he was unqualified due to lack of prior faculty status.

At the meeting where Dr. Sri received his letter of non-renewal, Dr. Sri informed Dr. Kuti and HR Dir. Bowman that he had been a professor *i.e.*, faculty. Unswayed, Dr. Kuti told Dr. Sri that he could resign, or the Dean would remove him. That Friday, Dr. Kuti gave Dr. Sri the weekend to think about resignation but insisted upon his decision no later than noon on the following Monday.

Exhibit 5 - Page 4 of 10

Subramania Sritharan
Case No. 2022-FRN-10-0137 et. al.
Page 3

Dr. Sri did not want to be removed by the Dean. He tendered his letter of resignation by the deadline. Dr. Kuti responded with an email thanking Dr. Sri for his years of service. Shortly thereafter, Dr. Sri produced a copy of his appointment letter which showed that he could fall back from the administrative position to a non-tenured professor. This proof, however, did not cause Dr. Kuti to rescind the non-renewal letter or correct it to acknowledge this right.

Up to this point, neither HR Dir. Bowman nor Dr. Kuti memorialized Dr. Sri's right of return to his former position. (At some point after the notice of non-renewal HR Dir. Bowman found the same letter of appointment that Dr. Sri produced to them in his official personnel file.) Not having heard any official acknowledgement from Dr. Kuti acknowledging his prior faculty status, Dr. Sri rescinded his resignation ostensibly in an attempt to preserve his ability to fall back to his old faculty position.

HR Dir. Bowman wrote Dr. Sri several days later rejecting Dr. Sri's rescission but finally acknowledged his right to fall back to the faculty position. Dr. Sri returned to the faculty position under a one-year contract pursuant to a collective bargaining agreement ("CBA").

Under the CBA, Dr. Kuti must consult with the department faculty chairman ahead of time each year before *renewing* Dr. Sri's contract. Dr. Kuti believed the absence of the word *non-renew* in the CBA language meant consultation was not required for non-renewal. In fact, the department faculty chairman wanted Dr. Sri to stay on as faculty and already scheduled classes for him to teach. This course of conduct indicated the department faculty chairman's preference that Dr. Sri be renewed.

But Dr. Kuti testified that he felt that the department faculty chairman was too partial to Dr. Sri and purposely decided not to consult him to avoid any protest about his intended non-renewal of Dr. Sri's contract. After Dr. Sri received this notice of non-renewal, the chairman wrote Dr. Kuti requesting that Dr. Sri be renewed to teach the classes. However, Dr. Kuti did not change his decision.

Dr. Kuti testified that Dr. Sri was the only *non-tenured* faculty, that the tenured faculty were protected from job loss, and that he needed to trim the budget because in his view there were too many professors and not enough students. Dr. Kuti provided no financial documentation or student data to support his view at hearing. On the other hand, Dr. Sri ascribes his job losses to his letter to Dr. Kuti alerting him that his salary funding was improper, and Dr. Kuti's subsequent retaliation.

Exhibit 5 - Page 5 of 10

Subramania Sritharan
Case No. 2022-FRN-10-0137 et. al.
Page 4

## CONCLUSIONS OF LAW

R.C. 124.341(B) Violation or Misuse – Whistleblower Protection states in pertinent part "no officer or employee in the classified or unclassified civil service shall take any disciplinary action against an employee in the classified or unclassified civil service for making any report or filing a complaint." The decisions to terminate renewal of Dr. Sri's contracts constitute the disciplinary action of removal.

To invoke whistleblower protection the employee must file a written report alleging a violation of rules or misuse of funds with the supervisor or appointing authority. R.C. 124.341(A).

Here, Dr. Sri wrote Dean Brooks (the appointing authority) and Dr. Kuti stating he believed that using earmark funds to pay Dr. Kuti likely may run afoul of the grant usage rules. Dr. Sri based his opinion on the fact that Dr. Kuti did not directly support research efforts in his new administrative position, and that the funds were to be used only for positions that directly supported research in agriculture and food science.

Dr. Brooks and Dr. Kuti reasonably disagreed with Dr. Sri's interpretation. However, Dr. Sri's interpretation was still rational. The code of federal regulation requires the grantee to only charge costs to administrative support services which "directly" support research, and not for general administrative costs. There is no dispute that Dr. Kuti's duties extended beyond just research. Therefore, the proportion of salary which could be paid out of the grant was open to dispute. Dr. Sri did not want to approve the use of the funds because of this, without first getting approval from the grantor.

Having established that Dr. Sri filed a written report in conformance with R.C. 124.341, the next issue is whether it is more likely than not that either or both non-renewals suffered by Dr. Sri were for his filing of his whistleblower report.

There is a span of almost 18 months between the time of Dr. Sri's March 23, 2021, whistleblower report and his September 16, 2022, non-renewal notice. Apparently, Dr. Sri was renewed near or around September 2021.

At hearing, Dr. Kuti testified that although he believed Dr. Sri was not a previous faculty member and that this was sufficient grounds for his first non-renewal, he had other reasons for non-renewing Dr. Sri which were not articulated in the letter. Dr. Kuti testified wanting a change in leadership because the Land Grant program was floundering. Dr. Kuti testified he discussed these other reasons with HR Dir. Bowman. However, HR Dir. Bowman testified that she could

Exhibit 5 - Page 6 of 10

Subramania Sritharan
Case No. 2022-FRN-10-0137 et. al.
Page 5

not recall that Dr. Kuti ever spoke about the other reasons, and that he came up with the articulated reason for non-renewal all by himself.

Though CSU employs a CBA administrator who is an attorney, and the non-renewal involved interpretation of the CBA, neither Dr. Kuti nor HR Dir. Bowman ever attempted to consult her. HR Dir. Bowman testified that if "a Dean" like Dr. Kuti requested a letter of non-renewal, she would type it up without further research or consultation.

The manifest weight of the evidence supports that Dr. Kuti single-handedly decided to non-renew Dr. Sri and predicated his action on a notion which could not reasonably be assumed. Namely, Dr. Kuti had every reason to know that Dr. Sri historically taught classes since at least 1990, and this would prompt a reasonable person standing in Dr. Kuti's shoes to check further as to whether Dr. Sri held faculty status.

Dr. Kuti's reckless attribution of an unsupported assertion about Dr. Sri's employment history raises the inference of retaliation. As an unclassified employee, Dr. Sri could have been non-renewed for the reasons that Dr. Kuti articulated after the fact, if genuine.

Dr. Kuti's decision to issue his letter without checking for accuracy combined with his failure to include his other purported reasons in the letter from the outset demonstrate shifting reasoning. "An employer's changing rationale for making an adverse employment decision can be evidence of pretext" to establish retaliation. *Sells v. Holiday Mgt. Ltd.*, 10th Dist. Franklin No. 11AP-205, 2011-Ohio-5974, ¶ 27 quoting *Thurman v. Yellow Freight Sys., Inc.* (C.A.6, 1996), 90 F.3d 1160, 1167.

Dr. Kuti chose very specific CBA language to justify both Dr. Sri's non-renewal and also to strip him of his faculty fallback rights. What is more, after being required to reinstate Dr. Sri to his faculty position, Dr. Kuti non-renewed Dr. Sri from the faculty position as soon as contractually possible, and purposely avoided any discussion with the department faculty chair (to avoid his disapproval) before carrying out the decision.

To sum up, Dr. Kuti articulated a false reason for his first non-renewal of Dr. Sri. Dr. Kuti had ample reason to question his unproven assumption about Dr. Sri's previous status before trying to use it as the solely articulated basis for non-renewal. When the reason was demonstrated to be false, Dr. Kuti failed to reverse his erroneous decision. Dr. Kuti's "other" reasons for the first non-renewal come only through his testimony at hearing, without corroboration, or any

Exhibit 5 - Page 7 of 10

Subramania Sritharan
Case No. 2022-FRN-10-0137 et. al.
Page 6

contemporaneous documentation of the purported events. Dr. Sri denies the characterization of these other events as recalled by Dr. Kuti.

Dr. Kuti's second non-renewal of Dr. Sri, purportedly for financial reasons, also comes without any corroborating evidence. Dr. Kuti's articulated reasoning is further undermined because the department faculty chair put Dr. Sri on the schedule to teach, and Dr. Kuti purposely avoided any prior notice or consultation with him. Dr. Kuti's rebuttal that the department faculty chair was biased in favor of Dr. Sri does not seem to be a convincing excuse to avoid him. Afterall, as a dean, Dr. Kuti could surely surmise that preparations for the fall class scheduled were well underway and his plan to non-renew Dr. Sri would likely hamper the accuracy of the course offerings.

In the end Dr. Kuti's reasons for the two non-renewals articulated at hearing are not convincing. They are not reliable or credible because of the complete lack of evidence to corroborate his standalone testimony.

This leaves only the inference that Dr. Sri's R.C. 124.341 report, potentially endangering both Dr. Kuti's promotion and salary, caused Dr. Sri to suffer retaliatory discipline in the form of loss of employment.

<u>Dr. Sri's resignation does **not** cut off his right to be made whole and to be free from retaliatory discipline for his R.C. 124.341 Whistleblower report.</u>

Appellee would have this Board find that Dr. Sri's resignation was effective and operates deny him the instant R.C. 124.341 Whistleblower appeal or at least forfeit the remedy of reinstatement. This Board does not have direct jurisdiction over a claim of forced resignation for an unclassified employee but can nevertheless reverse retaliation in violation of R.C. 124.341.

In this context, when an appointing authority induces resignation as the only alternative to removal based on false information, it is a constructive removal which will not work to deny the employee his appeal. *Kinney v. Ohio State Dept. of Adm. Services*, 14 Ohio App.3d 33, 36, (10th Dist.1984) When a public employee voluntarily resigns, the court must consider whether an objectively reasonable person would, under the totality of the circumstances, feel compelled to resign if they were in that employee's position. *Bennett v. Columbiana Cty. Coroner*, 7th Dist. No. 14 CO 0039, 2016-Ohio-7182, ¶ 49 A resignation is not effective when wrongfully persuaded based on contrary representations. *Williams v. State ex rel. Gribben*, 127 Ohio St. 398, 400 (1933)

Dr. Sri produced his appointment letter retaining his faculty rights to HR Dir. Bowman after his resignation from his administrative position. But CSU did not

Exhibit 5 - Page 8 of 10

Subramania Sritharan
Case No. 2022-FRN-10-0137 et. al.
Page 7

communicate that it would honor Dr. Sri's fall back to a faculty position in writing until after rejecting Dr. Sri's rescission of his resignation.

Dr. Sri's resignation was more likely than not induced by CSU's reckless disregard for knowing the truth about Dr. Sri's qualification, and his fallback rights under the CBA. Dr. Bri states that Dr. Kuti and HR Dir. Bowman were dismissive when he brought up his former faculty status at the meeting where he received his notice. Dr. Kuti and HR Dir. Bowman testified that they told Dr. Sri he could fall back to a faculty position if he showed proof of his prior faculty status.

Telling though is HR Dir. Bowman's lack of research into Dr. Sri's personnel file prior to the meeting. Equally telling is Dr. Kuti's setting of a tight deadline for Dr. Sri's resignation for the following Monday at noon even when Dr. Sri's contract did not expire until several days later. Perhaps most damning is HR Dir. Bowman's failure to have Dr. Sri's original letter of appointment ready for Dr. Sri to examine before he resigned that Monday. She admitted to finding the letter in Dr. Sri's personnel file at some later point. Why didn't she find it right after the non-renewal meeting or before? This course of events evinces an intentional desire on the part of CSU through HR Dir. Bowman and Dr. Kuti to capitalize on false information to induce the resignation of Dr. Sri., in spite of Dr. Sri's calling the information into question.

Moreover, Dr. Kuti's resignation deadline imposed a false sense of urgency for Dr. Sri. to resign quickly or "be removed". It also bolsters Dr. Sri's testimony about the tenor of the non-renewal meeting and tends to undercut Dr. Kuti and HR Dir. Bowman's recollection of their supposedly more conciliatory tone toward Dr. Sri at the meeting.

Under such circumstances, a reasonable person standing in Dr. Sri's shoes would believe that CSU was not going to honor his faculty status, and that he would be removed for the false reason of not meeting qualifications if he did not resign. Couching his resignation as a retirement was more dignified in the face of CSU's apparent *fait accompli*. Dr. Sri's resignation was therefore not voluntary at law, but rather a constructive dismissal.

The remedy for CSU's retaliatory conduct is reinstatement of Dr. Sri to his original administrative position with all the rights and emoluments contained in his original letter of appointment to that position including but not limited to the right to resume a faculty position. (Ex. 14) Dr. Sri is the prevailing party under R.C. 124.341.

Exhibit 5 - Page 9 of 10

Subramania Sritharan
Case No. 2022-FRN-10-0137 et. al.
Page 8

## RECOMMENDATION

Therefore, I respectfully **RECOMMEND** that Appellant's R.C. 124.341 Whistleblower appeal case no. 2023-WHB-04-0069 be **GRANTED**, and that he be restored to his administrative position of Associate Director of Research with all rights and benefits including the faculty fallback provision. Because Appellant was at all times an unclassified employee it is further recommended that Case Nos. 2022-FRN-10-0137, 2022-MIS-10-0138, 2023-REM-04-0067, 2023-MIS-04-0068 be **DISMISSED** for lack of jurisdiction over the person, pursuant to R.C. 124.03 and R.C. 124.34.

Raymond M. Geis
*Administrative Law Judge*

---

[1] https://www.usda.gov/partnerships/1890s-program (accessed July 27, 2023)
[2] See Ex. 13 Personnel Action Form ("PAR") for annual contract ending 3/31/21. Appellee did not introduce the subsequent PAR, or any notice of non-renewal for the following term, therefore it is assumed that Dr. Sri was renewed with a contract end date of 3/22.

Exhibit 5 - Page 10 of 10